Good morning, Your Honors. My name is David Melville, and I represent Dr. Robinson and his matter along with Ted Edelson, and I'd like to reserve four minutes of time for a public hearing. If not, I'd like to start off this morning by talking about the good faith and fair dealing covenant in Oregon to sort of set the broad picture, and then we can narrow it down on how it applies in this case. But in Oregon, the good faith and fair dealing covenant is going to prevail whenever a party is exercising discretion under a contract. And under the best case, that discretion, then most people exercise in a way that conforms with honesty, with commercial reasonableness, and that discretion, the exercise of discretion, will sooner or not evade the spirit of the bargain. Well, let me ask you about your good faith argument. Are you claiming on your good faith and fair dealing claim that the defendants had a duty to extend the waiver to the renewal agreement, or are you alleging they had a duty to negotiate the issue? Both. Well, if they extended the waiver to the renewal agreement, then there would be no reason to negotiate it further on than they should. Well, I think we get there under either. There's two main clauses here in the renewal, and the original franchise agreement has two clauses that are important, and they work in slightly different fashions here. And so 8.1.1, 8.1 of the original agreement, is the renewal provision. And it starts out saying that Dr. Rollins can't renew, he's got a right to renew unless certain provisions are, unless certain conditions are met. And 8.1.1 says that if, in other words, if Danfield can decide not to renew, if he is out of substantial compliance with his agreement. But then that provision goes on to say that the determination of the satisfactory compliance will be within Danfield's exclusive discretion in good faith. In some other words, if they're going to make a compliance determination that says, Dr. Robinson is out of compliance with the agreement because he's got his own pre-existing clinic, then good faith, according to the express terms of the agreement, is going to limit Danfield's availability to decide suddenly that he's out of compliance with it. In addition, we've got the implied covenant in Oregon. That's also going to come in because they're exercising discretion to determine whether or not he is in compliance. Because he's got his clinic that he's promised, then good faith is actually going to, both by the express clause and by the covenant comment, to limit their ability to say suddenly he's out of compliance. And so once we get the good faith, let me back up. So that's one column of the argument is under 8.1.1. And then Danfield is focusing on 8.1.4, which is the block of clause that says the franchisee then has to enter into a new franchise agreement. And under this one, there's room to negotiate. May I ask you, do you agree that this contract was governed by Oregon law? Yes. And is it your view that Oregon law permits covenant for breach of duty of good faith if you're dealing, even if there are contract terms that provide otherwise? Well, if there's an express term that contradicts, the express term is going to trump good faith. But then we've got the Perkins case from the Oregon Supreme Court, which involved an express contract provision. And then the Supreme Court said that good faith will come in to limit an argument about how that express clause is going to be adapted when the argument is going to create a good faith problem itself. Yeah, the problem in this case is that these are very harsh contract terms. But I don't think you're making an argument that they're unenforceable because of their harshness by you. No, not at all. Yeah, the problem is that the renewal of the franchise agreement specifically stated that the terms could be changed and that any renewal would be subject to the new terms. So why doesn't that contravene any implied waiver of the conditions previously? Well, there's a couple of reasons. First of all, it says that the terms may differ in the renewal agreement, but we're not looking at here at a case of a different term. What we've got is the same term in their 2013 non-renewal letter. They're trying to invoke the same exclusivity provision on compete to then now use it against Dr. Banfield. And we have the B letter that's SCR 11, which they say we're deeming that your case is not going to be a violation of the best exclusivity clause. But did CPI ever commit to taking that waiver into the future? Well, I think this is where reasonable expectations come under a good faith argument, because here we've got Dr. Banfield or Dr. Robinson who's invested based on these negotiations beforehand where they tell him you get to have your own claim. That's how they convince him to invest. And so he has to invest all of $4 million, all this time and energy. And then they follow up without giving him this letter, SCR 11, that says we're agreeing that your own claim is not going to be deemed a violation of the exclusivity provision. Well, you've laid out a pretty good argument that they waived the non-compete provisions of the original franchise agreement. I'm having a hard time finding how that non-compete waiver flows into the next phase, that's the renegotiation of the contract. I think you're basically arguing that it was going to last not only from the original agreement, but all the way through the renegotiation. How do you make that jump to the renegotiation of the new agreement? Well, there's a couple ways. One is good faith itself. If I've had an agreement. One of them is, yeah, what do I know is what facts do you have that show that the defendant's waiver was intended to extend past the franchise original agreement to the renewal agreement? I can't show exactly what they had in mind, and this is the 12-8-6 part. What facts do you have that get you there? Okay. Can we switch to the medical point? Yeah. So in terms of whether or not it's reasonable for Dr. Robinson to expect, the reasonable expectations is where we focus on on the good faith claim. What was reasonable for him to expect? And because they've got the letter that tells him he's not been deemed to violate it, and then we've got 10 years of conduct. And then if we look at the renewal clause itself, it says, this is 8.1.4, it says if he's going to enter into a new agreement, the terms may differ. But this is not a change in the term. It is the same term, only it's being applied in a different way, which gets us back to 8.1.1, which says if they're making a compliance determination, they have to do it in good faith. And so the good faith argument comes in to stop them from trying to revoke their waiver because they have to turn around and do something completely different than what they promised him in the first place. So if you look at the terms of the agreement from somebody going into this, back in 2004, which is the time under Bullock, we look at what the reasonable expectations of the plays are. I don't think it's reasonable, I don't think it's jury defined, it's not reasonable that a term is going to be, they say, you're not in violation of it. And then for them to turn around and with no change in circumstances later, to try to change it. And we've also got detrimental reliance here by Dr. Robinson as well, which makes it so they can't go back and revoke. And those facts are looking closely at the complaint. We see that back when he entered into the franchise agreement, his own clinic had only two, his own hospital only had two clinics. And by the time we get to now, he's expanded, so he's got four clinics of his own. He's expanded the number of employees he has. So as a result of their failure to enforce the exclusivity clause, he's been expanding his own practice. He also continues to invest by going out and documenting. So what I'm hearing is what you're saying is that you're finding that, you want us to find that the non-compete clause waiver goes into the new agreement. Because one, they waited for the original agreement in both the Johnson City franchise and an optional franchise. Two, they gave him that letter regarding the Johnson City franchise. And three, he detrimentally relied. And not only that, in 8.1.1, are there any other facts that make this non-compete clause waiver basically irrevocable, irrevocable? Those are the facts. I think another fact is that 8.1.1 has this clause in there that keeps them from changing or makes it so their compliance has to be done in good faith. And so I think, in other words, if you're a party reading this agreement, but they're beginning to franchisee, it says you can't revoke, or it says you can't exercise your discretion in a way that's not in good faith. That clause is going to make it so that they just, in the end, have to be licensed to revoke merely because there's a new agreement. They have to be in exercise of good faith in seeing whether or not they have compliance. All right. Do you want to save your balance for your time for rebuttal? All right. Good morning. Good morning. May it please the Court, Greg Ostfeld on behalf of the defendants, with me at counsel's table is Brian Strong. Plaintiff here is clearly disappointed with the written terms of the commercial agreement he signed, and he is asking this Court, as he asked the district court, to rewrite the commercial terms of that bargain. We respectfully submit that the district court correctly determined that the law holds plaintiff to the bargain he struck, and therefore the outcome of this case is determined by the plain language of the 2004 agreement. Specifically, by the renewal clause of that agreement, section 8.1, which sets forth the terms and the conditions for the renewal of plaintiff's song. Counsel, do you really think that's the bargain that the doctor thought he struck? Yes, Your Honor. I believe that the doctor is a sophisticated party who has operated successful veterinary clinics. He believed that that was the bargain that he struck. But he believed that at the end of the first franchise term, that he would be required to turn over to Banfield CPL clinic that he had successfully built up, Your Honor, and invested substantial money in without any reimbursement. So you really think that was his expectation? Several points on that, Your Honor. First of all, there was a great deal of reimbursement under the terms of the contract. Even if Banfield terminated the contract, they couldn't just take his clinic and give him no compensation for it. He's alleging that he didn't get the compensation provided under the agreement. What was the compensation provided in the agreement? Your Honor, the compensation terms are set forth, I believe, in section 8.7 of the agreement. It provides a formula for the purchase price for the agreement, as well as compensation terms for the inventory and for the equipment. First of all, do you know, in terms of dollars, how much compensation was actually provided to the doctor in this case? Your Honor, I don't know, and it's not on the record because there's been no allegation. Well, I understand that. I'm just asking you if you know the amount. I don't know, Your Honor. There are facts I can bring in from outside the record that would relate to this. But unless the court is interested in hearing them, I'll stay to put an answer in the record before me. Counsel, Judge Goldsmith, I can interject a question similar or related to the one that Judge Wallinson asked you. My understanding, and I'd like you to correct me if it's wrong, was that he received fair market value for his equipment, but that he, as far as I know, did not get anything for goodwill of having built up the business. Your Honor, there are facts in the record regarding the dollar amount he received. I can say that under the contract, there was a 40% of revenue calculation for the business, but that's value for inventory as well as value for equipment. So that was provided for under the contract. 40% of revenue. Yes, thank you. The other point I would make, and Judge Wallinson, with respect to your point, the notion that he was giving up his business for nothing, to some degree, I think, plaintiff is always voiced by his own pertinent on this argument because he's alleging this was an incredibly valuable business. He is saying that five years under this contract was worth $1.8 million. So even under just the original term of the contract, this was a franchise agreement that notwithstanding his investment, or actually investment of $250,000, was worth millions of dollars to him, and there was ample reason for him to want to enter this on the basis of the original term. Meanwhile, you have another point. But the original term was favorable to him because he could still operate the non-business. Right, Your Honor, because there was no enforcement of the non-competition clause  Let me follow up on that. Yes, Your Honor. Let's assume that the felons know up front that the waiver of the non-compete provision was non-negotiable for Dr. Robinson, meaning that he would not enter into this franchise agreement unless he knew the non-compete clause would be waived. Okay. Why wasn't it reasonable for Dr. Robinson to expect that his renewal option wouldn't be contingent upon compliance with the non-compete provision? Well, Your Honor, I think Dr. Robinson, by his own allegations, demonstrated in connection with the 2003 agreement that where he wanted a written modification of these agreements, he knew how to go out and get them. So not only could he have bargained for an express waiver of the non-competition clause during the original term, he certainly had the ability to try to bargain for an express waiver of the non-competition clause during the renewal term. But why wasn't it reasonable for him to expect that the terms that had been agreed upon would continue? Why was that unreasonable? Because the express language of the renewal term specifically told him the terms could differ. It told him in many different ways how it could differ. It said it could have no terms. But opposing counsel's position is that this was not a new term. It was one that had previously been proposed and rejected by the doctor. Your Honor, what the renewal clause said in Section 8.1.4 was that to obtain the renewal he wanted, Dr. Robinson needed to execute a new contract substantially on the terms and conditions of the then-current form of agreement. It expressly advised him that the then-current terms could differ from the existing terms. Not only that, under Section 8.1.2, if I wanted him, he couldn't be assured of a franchise renewal at all. My client had the discretion under 8.1.2 to say, we've decided we don't want our franchise program anymore, or we've decided we don't want our franchise program in your geographic market anymore. And that's a basis to deny renewal. So unconditional, is there any discretion that's exercised with that or can it be done arbitrarily? Under 8.1.2, it's not listed as a conditional right. It is a right that is available to Banfield to decide to stop having his franchise program in that market or to stop having it altogether. So there was no expectation under the express terms of the renewal clause that Dr. Robinson could expect that he wants here, which is not renewal on the then-current terms of the agreement, what he wants is renewal on the terms or substantially the terms of his 2004 agreement, including an unwritten waiver of the non-competition clause. Kelsey, I ask you, is this an unusual occurrence for there to not be a renewal of the franchise agreement based on a failure to come to agreeable terms? Is that unusual or is it more the norm? Leona, I think I don't know whether that's the usual for franchise agreements. That's a hard one. For Banfield. I don't even know for Banfield. There's nothing in the record as to whether this was a usual occurrence for Banfield or not. I would respectfully challenge the assumption that there was a necessity to come to agreement on the terms of the renewal. There was an objective yardstick in 8.1.4 for what the terms of the renewal would be. But I said he could negotiate. So to me that means if the franchisee has the ability to negotiate, then that means you have to come to terms before the franchise is consummated. Respectfully, Your Honor. I'm sorry. I didn't mean to interrupt. So are you telling me that the franchisee does not have the ability to negotiate terms? What I'm saying, Your Honor, is the plaintiff is asserting that he had a right under Oregon law for negotiation and good faith in the terms of the renewal, but that's not what Oregon law provides. Now, he can certainly try to negotiate for whatever he wants, but in terms of what my client was obligated to do, it was obligated to comply with the written terms of the agreement. And the question that's raised is whether it had discretion that it exercised in a manner contrary to the bonds of the duty of good faith and fair dealing. Is he alleging some exercise of discretion that violated the objectively reasonable contractual expectations of the client? Let me ask you this. Are you conceding that the covenant of good faith and fair dealing applies in this context? No, Your Honor. That's what I thought you just said. No, Your Honor. The covenant of good faith and fair dealing only applies if he can allege an exercise of discretion in connection with the carrying out of these renewal terms and if the renewal terms allow an exercise of that discretion. Here, now, he points to 8.1.1 in his argument. That clause involves exercise of discretion. The problem for the plaintiff is we never alleged an absence of satisfactory performance under 8.1.1. We never exercised our discretion to say our performance wasn't satisfactory, so that's why we're not renewing. We exercised no discretion under 8.1.4. We said our obligation here is to offer you renewal on precisely the terms of the then-current form of the charter practices agreement. So, in other words, it was a take-it-or-leave-it deal. It was our obligation was to offer you renewal on the terms we were then offering in our then-current form of the practices agreement. So, it's take-it-or-leave-it. There was no negotiation. You take this franchise agreement, what's the terms we have, or there is no franchise. Under the terms of the agreement, we had no obligation to do that. It was a take-it-or-leave-it deal. It was a take-it-or-leave-it deal from our perspective. We had no obligation to negotiate different terms with him. But then your statement that he could have tried to negotiate a waiver as he did the first time is not actually correct. Your Honor, he can always try to negotiate. We have no obligation to negotiate with him. But if he don't have any discretion, how could he try to negotiate? It would be a futile effort. Your Honor, the duty of good faith and fair dealing kicks in on discretionary exercises of authority under the. . . I'd like to argue on that, but it's inconsistent with your statement that he could always try to extend the exception that he had in the first franchise agreement. It can't be both ways. Your Honor, respectfully, I would submit that if that's the meaning of discretion, then discretion always exists. And the rule of good faith and fair dealing would always trump the exception. I'm trying to figure out what your argument is. I'm trying to figure out what your argument is. On the one hand, you say he could have tried to negotiate something that did something similar to what he had in the first agreement. On the other hand, you say that there was no discretion to change the terms. It was take-it-or-leave-it. So those two positions are inconsistent to me. Correct. Let me add much to this, Your Honor. If you'd like to lead me into meddling issues. My point is parties are always free to try to negotiate modifications to contracts. And the plaintiff is certainly free to ask for and try to negotiate a modification. But for purposes of good faith and fair dealing, the question is, does the contract as written give us the ability to exercise discretionary power in a way that would frustrate the objectively reasonable contractual expectations of the party? Here, we have a written contract that set forth the objectively reasonable contractual expectations of the party, that set forth an objective yardstick that is used to determine whether those expectations have been fulfilled. That yardstick is the then-current form of the charter purposes agreement. I think the only thing that's true, there's a triples issue that defendants could not negotiate renewal terms different than the then-current franchise agreement, or simply that they had no obligation to do so. Defendants had no obligation to do so. And there's nothing under the contract that gives them discretion to vary what they offer to the plaintiff. We didn't have discretion in terms of what we offered to him as a renewal, what we had to offer him was the then-current form of the charter purposes agreement. So how did this contract then differ from the original contract where he was given the opportunity to have non-ban field facilities? So that just seems inconsistent to me, that the franchise had the authority to modify the agreement for the first franchise agreement, but for the second one, there was no ability to modify it. Respectfully, Your Honor, I don't think it's inconsistent. There is not a dispute between the parties that the non-competition clause in each of these contracts was substantially similar. These were very similar non-competition clauses in both the original agreement and in the proposed renewal agreement. The difference here was it was a matter of enforcement. Ban field elected not to enforce the non-competition clause during the original term of the agreement. And then several years before the commencement of the renewal period, it gave notice to plaintiffs and said, if you want to renew beyond notice going forward, we are going to insist on an unwaived non-competition clause. So the language of the non-competition clause, it varied in some minor ways, it looks like, on the original agreement. But what changed was the plaintiff took a position and notified plaintiffs, we're going to adhere to the terms of the end card form of the agreement going forward. And they had the complete right to do that under the written terms of the agreement. Dr. Robinson was under clear notice that when the renewal came up, the terms of the contract could change, there might be no renewal at all. And the reason he went forward had nothing to do, he hasn't alleged any thefts, demonstrating that the reason he went forward under the original agreement was in reliance on the renewal term. He had plenty of reason, and under the plausibility standards of Twombly and Iqbal, the plausible reason why he went forward under the original term of the agreement is because there was millions and millions of dollars to be made here, which apparently he did make under the original term of the agreement. I'm not sure I understood your answer to my question. You're saying defendants could negotiate renewal terms different than the end card franchise agreement. Under the terms of the renewal clause, what the defendants had an obligation to offer was the then current term of the franchise agreement. If they had not offered that, it would have been in violation of the renewal clause. But they negotiated. If the parties wanted to negotiate a modification outside of the contract, parties always have the power to negotiate a modification outside of the contract, but that's not discretion for purposes of the covenant of good faith and fair dealing. Thank you. Thank you, Your Honor. Thank you, Your Honors. I have three points on rebuttals. The first is, Anne Hill told the magistrate judge at page 22 of the transcript below that they were claiming that Dr. Robinson was not in substantial compliance with the agreement by having his own franchise. I heard counsel say the opposite, so that's not what they argued below the magistrate judge. The second thing is that paragraph 34 of our complaint, it alleged that he did not receive fair compensation for his franchise. And also, the way this works is there's a ramp up that happens according to the royalties, and so it takes time to get a fedora off the ground. It takes time before he's going to recoup his investment. And the third point is, they absolutely had discretion to negotiate under 8.1.4. The cases that he cited in his brief were the test services case and the mailbox, et cetera case. I went and looked at those cases, and the renewal agreements they are talking about, it had to be on the same terms or on the terms of the current agreement. That's very different than what 8.1.3 says, because here it only says it has to be substantially on the terms of the current franchise agreement. And it says it's not free to Banfield. So those things bring in Banfield and Dr. Robinson's ability to negotiate what the terms would look like upon renewal, and substantially is not the same. Here Dr. Robinson is saying you can give me the same agreements, and as long as you comply with the way we've always read this from the outset, I'm perfectly happy with that. That is substantially on the same terms. Under the Banfield case. It's just one other question for you. Under the agreement that you claim should have been renewed, was there also a provision for that agreement to be renewed after its 10-year term was up? It says, yeah, the next renewal provision is for five years, and then it says that it either can be renewed after that, or there will be an exit strategy in place. Okay, so is it your position that the irrevocable waiver of the non-compete language will apply out to the next contract renewal? I just want to go off from a premiere view, client's view, or just go on forever, and Trevor has to keep renewing and keep waiving just forever? Certainly as long as the contract, as the exclusivity clause language stays the same. Okay, thank you. Commissioner? All right, thank you. Thank you to both counsel. The case that's argued is submitted for a decision by the court. The next case on calendar, Benford versus United States has been submitted on the briefs.
judges: Gould, Rawlinson, Rayes